IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-00113-RJC

| | |
|---|---|
| JAMES LEE PRICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | ORDER |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 10, 12); and the parties' associated briefs and exhibits. The motions are ripe for adjudication.

I.     BACKGROUND

A. Procedural Background

James Lee Price ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") on August 28, 2013, alleging a disability onset date of March 1, 2010. (Doc. No. 8 to 8-1: Administrative Record ("Tr.") 14). His application was denied first on March 13, 2014 and upon reconsideration on April 14, 2015. (Tr. 14). Plaintiff filed a timely request for a hearing on May 22, 2015,

and an administrative hearing was held by an administrative law judge ("ALJ") on March 27, 2017. (Tr. 14).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 14–23). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for review. (Tr. 14). After having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 14). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on March 1, 2010 due to chronic neck, back, and shoulder pain stemming from left shoulder tears and degenerative disk disease. (Tr. 15–17).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 14). In reaching her conclusion, the ALJ used the five-stepسequential evaluation process established by the Social Security Administration for determining if a person is

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

disabled. The Fourth Circuit has described the five steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 22–23).

In reaching her decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe physical impairments,[2] and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 16–17). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff has:

> the [RFC] to perform light work . . . except the claimant can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs.

---

[2] The ALJ concluded that Plaintiff has the following severe impairments: degenerative disk disease and status post bilateral rotator cuff tears. (Tr. 16–17).

3

> He can frequently balance, stoop, crouch, kneel, crawl, and reach overhead bilaterally. The claimant can never be exposed to dangerous machinery or unprotected heights, but can occasionally be exposed to dust, fumes, gases, odors, and pulmonary irritants."

(Tr. 17).

Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 21). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in his RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 21–22). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three representative occupations that exist in significant numbers in the national economy: "electronics worker,"[3] "inspector and hand packager,"[4] and "shipping and receiving weigher."[5] (Tr. 22). All of these jobs involve "light exertion" according to the Dictionary of Occupational Titles ("DOT").[6] The ALJ accepted the VE's testimony and concluded

---

[3] DOT 726.687-010, 1991 WL 679633.
[4] DOT 559.687-074, 1991 WL 683797.
[5] DOT 222.387-074, 1991 WL 672108.
[6] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

4

that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 21–22).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a

---

sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

5

suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ failed to support the RFC determination with substantial evidence, namely in the form of a medical opinion, and as a result, failed to adequately account for Plaintiff's functional limitations in the RFC. The Court agrees with Plaintiff's allegation of error, and therefore, remands on this basis.

Plaintiff argues that the ALJ failed to provide a logical bridge between the evidence and her conclusion that Plaintiff could perform any of the functions listed in the RFC. According to Social Security Ruling 96-p, ALJs must assess a

6

claimant's work-related abilities on a function-by-function basis and include a narrative discussion explaining how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-p, 1996 WL 374184, at *1, *7. Although the RFC assessment is ultimately an administrative decision, the underlying determination is a medical one as to claimant's physical abilities. Arnold v. Colvin, Civ. A. No. 3:12-cv-02417, 2014 WL 940205, at *4–5 (M.D. Pa. Mar. 11, 2014) (internal citations omitted). Once the doctor has determined, for example, how long the claimant can sit, stand, or walk, or how much the claimant can lift, then the ALJ translates that medical determination into an RFC determination. Id.

When a narrative discussion is missing, and a meaningful factual development is lacking, district courts may not mine facts from the record to later construct a logical bridge. Marshall v. Colvin, No. 3:14-CV-00608, 2016 WL 1089698, at *2 (W.D.N.C. Mar. 21, 2016) (citing Brown v. Colvin, No. 14-2106, 2016 WL 502918, at *2 (4th Cir. Feb. 9, 2016)). There is no per se rule requiring remand for failure to perform an explicit function-by-function analysis; rather, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015).

Here, the Court finds that this case presents a classic example of an ALJ failing to "[s]how [her] work." Patterson v. Comm'r of Soc. Sec. Admin, 846 F.3d 656, 663 (4th Cir. 2017) (directing ALJs to explain their reasoning by connecting

7

evidence to conclusions so that this Court receives an appropriate record for review). In her decision, the ALJ recounts the findings of several diagnostic imaging scans, including several MRIs and an X-ray. (Tr. 18–20). The ALJ's discussion of the scans is almost entirely limited to technical medical and anatomical terms. (Tr. 19)[7] Absent a medical degree and a copy of Gray's Anatomy, the Court does not understand these terms and more importantly, how they translate into functional limitations, or lack thereof, for Plaintiff. Similarly, the Court does not expect the ALJ to make such inferences without the guidance of a medical professional.

On two occasions, the ALJ discusses somewhat more useful results from medical evaluations of Plaintiff, but again fails to mention any evidence that translates these findings into physical capacity:

> After an orthopedic examination in December 2012, the claimant was diagnosed with chronic myofascial upper back pain, left shoulder pain with positive impingement signs, history of C3-C4 anterior fusion, and narcotic dependence. He had full range of motion in his cervical spine and upper extremities except some limitation with left shoulder abduction and flexion. . . . He was given trigger point injections and physical therapy was suggested for his upper back pain that he declined.

(Tr. 19).

---

[7] For example, the ALJ noted the following:

> An MRI of the claimant's cervical spine revealed a prior surgery at C2-C3 with no disc herniation or complications and mild bulge at C4-C5 that indents the anterior thecal sac very slightly with no cord impingement seen. . . . There was some fluid in the subacromial-subdeltoid bursa compatible with bursitis. . . . [Claimant] was diagnosed with superior labral anterior-posterior tear, supraspinatus near full thickness rotator cuff tear, adhesions, and recurrent impingement.

(Tr. 19).

Here, the ALJ notes that Plaintiff had "some limitation" with left shoulder movement, but does not cite any medical evidence indicating the severity of the limitation, how the limitation might impact Plaintiff's ability to reach overhead, how the limitation might impact Plaintiff's ability to lift any amount of weight, how frequently Plaintiff might be able to lift and carry that weight, etc. In another review of an evaluation, the ALJ notes Plaintiff's intense discomfort in his hands that "was made worse with standing, walking, lifting, and exercise." (Tr. 20). Although "[m]edication" and "frequently alternating positions" help alleviate the pain, the ALJ does not cite any evidence about Plaintiff's resulting physical abilities. (Id.). As such, the Court is perplexed why the ALJ did not include a corresponding limitation regarding Plaintiff's need to alternate positions frequently or a sit/stand option in the RFC. Perhaps such a limitation is unnecessary, but the Court is left in the dark as to why this would be so absent an express explanation from the ALJ. This type of guesswork is what Mascio prohibits, and thus, the Court declines to speculate on the ALJ's rationale for not adopting such a limitation. Rather, the ALJ must show her work. Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) ("Show your work").

Defendant argues that the ALJ did consider medical opinions regarding Plaintiff's physical abilities in the process of determining the RFC. Defendant notes that Plaintiff's primary care provider found Plaintiff to have "normal muscle mass/tone and strength 5/5" and "needed a note to return to work." (Tr. 728). Defendant also points out that Plaintiff worked as a tree trimmer in 2012 and 2014

despite Plaintiff's characterization of his own pain. (Tr. 455). But because the ALJ did not mention either of these points in her decision, the Court refrains from conjecturing on how these facts might have impacted the ALJ's analysis and ultimate determination. Defendant asks the Court to embark on a fact-finding mission—the very "min[ing of] the record" that this Court is prohibited from doing. See Marshall, 2016 WL 1089698, at *2 (citing Brown, 2016 WL 502918, at *2).

Absent any medical evidence as to how the above scans or evaluations impacted Plaintiff's functionality,[8] the ALJ found Plaintiff's testimony regarding his daily routine, specifically the intensity, persistence, and limiting effects of his pain, to be "not entirely consistent with the medical evidence." (Tr. 20). The ALJ notes that Plaintiff testified to being able to do light housework with some difficulties and "being able to sit thru a movie and do things with his family." (Id.). The Court is unclear as to how being able to sit through a movie refutes, supports, or interacts at all with the medical scans noted above, and more importantly, how that translates into an ability to work for a full eight-hour workday and workweek. Additionally, Plaintiff argues that he testified that he was able to do light chores, but only for 15–20 minutes at a time with long, multi-hour breaks in between. (Doc. No. 11 at 9). The ALJ did not explain how she accounted for Plaintiff's apparent need for

---

[8] The ALJ concludes that "[d]iagnostic imaging showed the claimant had only mild degenerative changes." (Tr. 21). Again, the Court is uncertain how (1) the ALJ was able to conclude that multiple MRIs and an X-ray detailing Plaintiff's specific anatomical abnormalities were actually just "mild degenerative changes" and (2) how those "mild degenerative changes" impact a person's ability to "frequently balance, stoop, crouch, kneel, crawl, and reach overhead bilaterally." (Tr. 17).

frequent, long breaks in the RFC, or alternatively, why she did not find this testimony convincing, as opposed to Plaintiff's other testimony regarding light housework.[9]

In sum, the Court is left to guess how Plaintiff's diagnostic scans or medical examinations relate in any way to the RFC. Absent further explanation from the ALJ, the Court is unclear how Plaintiff's testimony supports or refutes these scans, and correspondingly, why some testimony is credible over other portions. Accordingly, "[t]he ALJ's lack of explanation requires remand." Mascio, 780 F.3d at 640.

## IV. CONCLUSION

Remand is warranted because the ALJ failed to "build an accurate and logical bridge from the evidence to h[er] conclusion." Monroe, 826 F.3d at 189 (quoting Clifford, 227 F.3d at 872).

**IT IS THEREFORE ORDERED THAT:**

    1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**;

---

[9] Instead, the ALJ used boilerplate language to discount Plaintiff's testimony: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). Without further explanation of why the ALJ found Plaintiff's testimony incredible, this boilerplate language is insufficient standing alone.

11

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

3. This matter is **REMANDED** for a new hearing consistent with this Order; and

4. The Clerk of Court is directed to close this case.

Signed: June 30, 2019

Robert J. Conrad, Jr.
United States District Judge